No. 24-1716

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———————————

Representative DAWN KEEFER, *et al.*,

Plaintiffs-Appellants,

v.

President JOSEPH R. BIDEN, in his official capacity as President of the
United States of America, *et al.*,

Governor JOSH SHAPIRO, in his official capacity as Governor of the
Commonwealth of Pennsylvania, *et al.*,

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania

———————————

## BRIEF FOR FEDERAL DEFENDANTS-APPELLEES

———————————

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

DANIEL TENNY
JEFFREY E. SANDBERG
*Attorneys, Appellate Staff*
*Civil Division, Room 7214*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-4453*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ............................................................... 1

STATEMENT OF THE ISSUE ..................................................................... 1

STATEMENT OF RELATED CASES AND PROCEEDINGS ................... 1

STATEMENT OF THE CASE ...................................................................... 2

A.    Factual Background ........................................................................ 2

B.    Prior Proceedings .......................................................................... 5

SUMMARY OF ARGUMENT ..................................................................... 8

STANDARD OF REVIEW ........................................................................... 9

ARGUMENT ................................................................................................ 9

PLAINTIFFS LACK STANDING TO SUE FOR ALLEGED
INJURIES TO THE LEGISLATURE IN WHICH THEY SERVE .............. 9

A.    Under Well-Established Precedent, Individual Legislators Lack
      Standing to Assert Institutional Injuries ...................................... 11

B.    The Foregoing Principles Are Dispositive of Plaintiffs' Suit ........ 17

C.    Plaintiffs' Contrary Arguments Are Unavailing ............................ 19

CONCLUSION ........................................................................................... 28

COMBINED CERTIFICATIONS

# TABLE OF AUTHORITIES

**Cases:**                                                                                    **Page(s)**

*Accardi v. United States,*
   435 F.2d 1239 (3d Cir. 1970)..........................................................................26

*Alaska Legislative Council v. Babbitt,*
   181 F.3d 1333 (D.C. Cir. 1999)............................................................... 16-17

*Americold Realty Tr. v. Conagra Foods, Inc.,*
   577 U.S. 378 (2016)......................................................................................27

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n,*
   576 U.S. 787 (2015).......................................................................... 14, 20-21

*Baird v. Norton,*
   266 F.3d 408 (6th Cir. 2001) .......................................................................24

*Bender v. Williamsport Area Sch. Dist.,*
   475 U.S. 534 (1986)......................................................................................12

*Campbell v. Clinton,*
   203 F.3d 19 (D.C. Cir. 2000) .......................................................................24

*Chenoweth v. Clinton,*
   181 F.3d 112 (D.C. Cir. 1999) ..............................................................17, 24

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) .......................................................................................9

*Cognizant Tech. Sols. Corp. Derivative Litig., In re,*
   101 F.4th 250 (3d Cir. 2024) (en banc) ......................................................27

*Coleman v. Miller,*
   307 U.S. 433 (1939)........................................... 7, 12, 13, 15, 23, 24

*Crawford v. U.S. Dep't of the Treasury,*
   868 F.3d 438 (6th Cir. 2017) .......................................................................16

*Dennis v. Luis,*
   741 F.2d 628 (3d Cir. 1984)....................................................................21, 22

*Dole Food Co. v. Patrickson,*
   538 U.S. 468 (2003) .....................................................................................27

*FDA v. Alliance for Hippocratic Med.*,
   602 U.S. 367 (2024) ................................................................. 10

*Fumo v. City of Philadelphia*,
   972 A.2d 487 (Pa. 2009) ........................................................... 25

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002) ................................................................. 26

*Goode v. City of Philadelphia*,
   539 F.3d 311 (3d Cir. 2008) ............................... 15, 18, 22, 23, 25

*Kaplan, In re*,
   143 F.3d 807 (3d Cir. 1998) ...................................................... 27

*Kerr v. Hickenlooper*,
   824 F.3d 1207 (10th Cir. 2016) ................................................. 16

*Lewis v. Government Emps. Ins. Co.*,
   98 F.4th 452 (3d Cir. 2024) ......................................................... 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................. 10

*Moore v. Harper*,
   600 U.S. 1 (2023) ..................................................................... 20

*Nichols v. City of Rehoboth Beach*,
   836 F.3d 275 (3d Cir. 2016) ........................................................ 8

*Polsky v. United States*,
   844 F.3d 170 (3d Cir. 2016) (per curiam) ................................... 26

*Raines v. Byrd*,
   521 U.S. 811 (1997) ......................................................... *passim*

*Russell v. DeJongh*,
   491 F.3d 130 (3d Cir. 2007) ............................ 10, 14, 15, 23, 24, 25

*Silver v. Pataki*,
   755 N.E.2d 842 (N.Y. 2001) (per curiam) ................................... 25

*Simko v. U.S. Steel Corp.*,
   992 F.3d 198 (3d Cir. 2021) ........................................................ 8

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..................................................................... 10

*United States v. Ballin*,
  144 U.S. 1 (1892)......................................................................... 19

*Virginia House of Delegates v. Bethune-Hill*,
  587 U.S. 658 (2019)................................................................*passim*

*Warth v. Seldin*,
  422 U.S. 490 (1975).............................................................. 10, 11

*Yaw v. Delaware River Basin Comm'n*,
  49 F.4th 302 (3d Cir. 2022) ..................................................*passim*

**Constitution:**

U.S. Const. art. I, § 4, cl. 1............................................ 5, 8, 18, 20

U.S. Const. art. II, § 1, cl. 2........................................... 5, 8, 18, 20

**Statutes:**

28 U.S.C. § 1291 ............................................................................ 1

28 U.S.C. § 1331 ............................................................................ 1

28 U.S.C. § 1343(a)(3) .................................................................. 1

28 U.S.C. § 1346(a)(2) .................................................................. 1

42 U.S.C. § 1983 ......................................................................... 26

25 Pa. Stat. § 2607 ........................................................................ 4

25 Pa. Stat. § 2607(a)-(b)............................................................. 5

**Rule:**

Fed. R. Civ. P. App. 4(a)(1)(B) .................................................... 1

**Other Authorities:**

Cox, James D. & Thomas Lee Hazen, *Treatise on the Law of Corporations* § 15.3 (3d ed.) .......................................................... 27

Executive Order 14019 (EO 14019), *Promoting Access to Voting*, 86 Fed. Reg. 13,623 (Mar. 10, 2021)......................................................2, 3, 5

Health Res. & Servs. Admin., Health Ctr. Program, *Voter Registration and Health Centers* (Mar. 2022), https://perma.cc/6UJQ-E86L................. 3-4

HUD, Office of Pub. & Indian Hous., Announcements (Feb. 9, 2022), https://perma.cc/B9EE-W7Z7.................................................................. 3

Penn. House of Representatives, House Roll Calls No. 1148 (July 8, 2022), https://perma.cc/N4E5-349A.......................................... 22

Penn. State Senate, Senate Roll Calls No. 704 (July 7, 2022), https://perma.cc/4QYQ-7WTH................................................................. 22

U.S. Dep't of Agric., Food & Nutrition Serv., Policy Memo SP 07-2022, *Promoting Access to Voting through the Child Nutrition Programs* (Mar. 23, 2022), https://perma.cc/2T79-RHA2 .......................... 4

U.S. Dep't of Educ., Fed. Student Aid:

Dear Colleague Letter GEN-22-05, *Requirements for Distribution of Voter Registration Forms* (Apr. 21, 2022), https://perma.cc/G63B-DE8T .............. 4

Dear Colleague Letter GEN-24-03, *Use of Federal Work-Study Funds for Voter Registration* (Feb. 26, 2024), https://perma.cc/R6JD-GR3Q............... 4

## STATEMENT OF JURISDICTION

Plaintiffs-appellants sought to invoke the district court's jurisdiction for their claims against federal defendants under 28 U.S.C. §§ 1331, 1343(a)(3), and 1346(a)(2).  App. 33 (Am. Compl. ¶ 4).  The district court dismissed the complaint for lack of standing on March 26, 2024.  App. 3 (Order); App. 4-30 (Memorandum).  Plaintiffs timely appealed on April 18, 2024.  App. 1-2; *see* Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Plaintiffs are 27 legislators in the Pennsylvania General Assembly who allege that the issuance and implementation of a 2021 federal executive order has impinged upon the authority of state legislatures under the Electors and Elections Clauses of the U.S. Constitution.  The question presented is whether plaintiffs lack Article III standing to bring this action on their own behalf.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This matter is also currently pending before the U.S. Supreme Court on plaintiffs' petition for a writ of certiorari before judgment, filed on April 23, 2024.  Plaintiffs sought expedited consideration of their petition, which was denied.  *See Keefer v. Biden*, No. 23-1162, 2024 WL 2262327 (U.S. May 20, 2024).  The Supreme Court is currently scheduled to consider plaintiffs' petition at its September 30, 2024 conference.

## STATEMENT OF THE CASE

### A.    Factual Background

**1.** In March 2021, President Biden issued Executive Order 14019 (EO 14019), entitled "Promoting Access to Voting." 86 Fed. Reg. 13,623 (Mar. 7, 2021) (App. 117-121). EO 14019 declared that "[i]t is the policy of [this] Administration to promote and defend the right to vote for all Americans who are legally entitled to participate in elections." *Id.* § 2 (App. 117). The President stated that "[i]t is the responsibility of the Federal Government to expand access to, and education about, voter registration and election information … in order to enable all eligible Americans to participate in our democracy." *Id.* (App. 117).

Among other provisions, EO 14019 instructs agencies to "consider ways to expand citizens' opportunities to register to vote and to obtain information about, and participate in, the electoral process." EO 14019, § 3 (App. 117). Agency leaders are to "evaluate ways in which the agency can, as appropriate and consistent with applicable law, promote voter registration and voter participation." *Id.* § 3(a) (App. 117). Among other ideas, agencies were instructed to consider "ways to provide relevant information" to the public "about how to register to vote, how to request a vote-by-mail ballot, and how to cast a ballot in upcoming elections," including potentially by "soliciting and

facilitating approved, nonpartisan third-party organizations and State officials to provide voter registration services on agency premises." *Id.* § 3(a)(i)-(iii) (App. 117-118).  The order indicated that all activities must be "implemented consistent with applicable law," *id.* § 12(b) (App. 121), including specifically that any assistance with voter registration and vote-by-mail ballot applications must be "consistent with all relevant State laws," *id.* § 3(a)(iii)(B) (App. 118).

Many federal agencies responded to EO 14019 by issuing voting-related guidance to regulated parties and members of the public.  For example, the Department of Housing and Urban Development (HUD) issued guidance reminding public housing agencies that they may make "voter registration forms available to residents" and provide them with "documentation of residence," which some states require during voter registration.  HUD, Office of Pub. & Indian Hous., *Announcements* (Feb. 9, 2022), https://perma.cc/ B9EE-W7Z7.  It cautioned public housing agencies that "[m]any rules about voting are set by states, so [they] should check with their counsel to ensure that all activities are compliant with local and state law." *Id.*

As another example, a component of the Department of Health and Human Services shared guidance informing federally funded health centers that they could, "to the extent permitted by applicable law," support "non-partisan voter registration efforts."  Health Res. & Servs. Admin., Health Ctr.

Program, *Voter Registration and Health Centers* (Mar. 2022), https://perma.cc/ 6UJQ-E86L. While stating that relevant federal grant funds could not be used to fund voter registration, the guidance explained that centers could choose to use their own resources to support voter participation by, *inter alia*, "assisting patients with completing registration forms, sending completed forms to the election authorities, [and] providing voter registration materials in waiting rooms," subject to "any applicable federal, state, and local legal restrictions." *Id.* Other federal agencies named in this lawsuit took similar measures.[1]

**2.** In July 2022, the Pennsylvania General Assembly enacted Senate Bill 982 (SB 982). *See* 25 Pa. Stat. § 2607 (App. 113-116). Among other provisions, the statute provides that "[t]he cost and expense to State and local governments relating to the registration of voters … shall be funded only upon lawful appropriation of the Federal, State and local governments," and that "State and local governments … may not … receive or expend gifts, donations,

---

[1] *See, e.g.*, U.S. Dep't of Agric., Food & Nutrition Serv., Policy Memo SP 07-2022, *Promoting Access to Voting through the Child Nutrition Programs* (Mar. 23, 2022), https://perma.cc/2T79-RHA2 ("encourag[ing]" state and regional directors of Child Nutrition and Special Nutrition programs to provide "voter registration and non-partisan, non-campaign election information"); U.S. Dep't of Educ., Fed. Student Aid, Dear Colleague Letter GEN-22-05, *Requirements for Distribution of Voter Registration Forms* (Apr. 21, 2022), https:// perma.cc/G63B-DE8T, and Dear Colleague Letter GEN-24-03, *Use of Federal Work-Study Funds for Voter Registration* (Feb. 26, 2024), https://perma.cc/ R6JD-GR3Q (addressing the use of Federal Work Study funds to support non-partisan voter registration activities in certain circumstances).

grants, or funding from … any nongovernmental entity for the registration of voters." *Id.* § 2607(a)-(b) (App. 113).

### B.    Prior Proceedings

**1.**  In January 2024, plaintiffs-appellants, who are 27 members of the Pennsylvania General Assembly, brought this suit against various defendants in the executive branches of the state and federal governments.  App. 12.  As relevant to federal defendants, plaintiffs allege that the President's issuance of EO 14019 contravened the authority of state legislatures under the Electors and Election Clauses of the Constitution,[2] and that federal agencies' implementation of EO 14019 has "nullifie[d]" the votes of legislators who voted in favor of SB 982.  App. 59 (Am. Compl. ¶ 178).  Plaintiffs also asserted related claims against the Governor of Pennsylvania and state election officials.  All defendants moved to dismiss the suit on multiple grounds, including that plaintiffs lack standing to vindicate alleged institutional harms to the Pennsylvania General Assembly.

---

[2] The Elections Clause provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."  U.S. Const. art. I, § 4, cl. 1.  The Electors Clause provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress."  *Id.* art. II, § 1, cl. 2.

**2.**  The district court dismissed the suit for lack of standing.  App. 3-30.
The court explained that under the Supreme Court's "seminal" holding in
*Raines v. Byrd*, 521 U.S. 811 (1997), individual legislators lack standing to sue
when they allege "'a type of institutional injury (the diminution of legislative
power), which necessarily damages all Members [of the legislature] …
equally.'"  App. 19-20 (quoting *Raines*, 521 U.S. at 821).  It observed that this
Court, too, has recognized the "'well-established principle that individual
legislators lack standing to assert institutional injuries belonging to the
legislature as a whole,'" such as those that "'sound in a general loss of
legislative power.'"  App. 23 (quoting *Yaw v. Delaware River Basin Comm'n*,
49 F.4th 302, 311, 314 (3d Cir. 2022)).

Applying those principles, the district court reasoned that the alleged
injuries here are institutional.  It observed that plaintiffs' claim is that
defendants have transgressed limits allegedly imposed by "the Elections and
Electors Clauses," which confer authority not upon individuals but upon the
"the Legislature" of each State.  App. 24.  Plaintiffs are thus "seeking to
vindicate injuries that would be suffered by the Legislature as a whole." *Id.*
The court rejected plaintiffs' efforts to reconceptualize that institutional injury
as a harm to the effectiveness of their individual votes, explaining that if
plaintiffs' assertions were accepted, "the standing requirement of a

particularized injury would be rendered meaningless." App. 25. It concluded that the suit cannot proceed because plaintiffs have not "suffered an injury that is any different than any other member of the Pennsylvania General Assembly," *id.*, and they have not obtained "approval of th[at] institution" to sue on its behalf, App. 26.

The district court specifically rejected plaintiffs' attempted reliance on *Coleman v. Miller*, 307 U.S. 433 (1939), a case involving alleged interference with a legislature's own voting procedures. App. 25-26. The court noted that the Supreme Court has since clarified that *Coleman* stands only for the narrow principle that "legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." App. 21 (quoting *Raines*, 521 U.S. at 823). Here, the court explained, plaintiffs "have not suffered a complete nullification of their vote"; rather, their votes on SB 982 were given full effect, and their claimed injury rests instead on defendants' alleged failures to respect the prerogatives of state legislatures under the U.S. Constitution. App. 25-26. The court similarly rejected plaintiffs' reliance on various state-court decisions, explaining that standing in federal court is governed by Article III: "'[t]he fact that a party has standing in state court does not mean that they have standing

in federal court.'"  App. 27 (alteration in original) (quoting *Yaw*, 49 F.4th at 316).[3]

## SUMMARY OF ARGUMENT

Plaintiffs are 27 state legislators, suing in a purely individual capacity, who seek to redress alleged violations of the Elections and Electors Clauses of the U.S. Constitution, which confer certain duties upon the "Legislature" of "each State."  U.S. Const. art. I, § 4, cl. 1; *id.* art. II, § 1, cl. 2.  But "under well-established Supreme Court caselaw, 'individual members lack standing to assert the institutional interests of a legislature.'"  *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 307 (3d Cir. 2022) (quoting *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 667 (2019)).  Article III allows an action by individual legislators to proceed only if they can show that they have been "deprived of something to which they *personally* are entitled."  *Raines v. Byrd*, 521 U.S. 811, 821 (1997).  The "diminution of legislative power" is not such an injury.  *Id.*

---

[3] The district court also rejected plaintiffs' alternative theories of standing based on their claimed status as candidates, citizens, taxpayers, and voters, App. 28-29, and plaintiffs do not renew those theories on appeal. *See* Br. 29-41. These alternative arguments for standing are thus forfeited, *see, e.g.*, *Nichols v. City of Rehoboth Beach*, 836 F.3d 275, 282 n.1 (3d Cir. 2016), and they cannot be revived by amici, *see, e.g.*, *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 206 (3d Cir. 2021) (refusing to allow amicus "to resurrect an issue that [the appellant] abandoned on appeal").

As the district court recognized, those principles are dispositive here. Plaintiffs allege only an impairment of the General Assembly's constitutional prerogatives and minimized effectiveness of SB 982. They thus "run[] headlong into the well-established principle that individual legislators lack standing to assert institutional injuries belonging to the legislature as a whole." *Yaw*, 49 F.4th at 311. Plaintiffs' assertions on appeal only underscore the institutional nature of their injuries and the "mismatch between [the persons] seeking to litigate and the body to which the relevant constitutional provision" assigns authority. *Bethune-Hill*, 587 U.S. at 667. This Court should affirm.

## STANDARD OF REVIEW

This Court exercises "plenary review over a threshold question of law, such as that presented by an Article III standing challenge." *Lewis v. Government Emps. Ins. Co.*, 98 F.4th 452, 459 (3d Cir. 2024) (quotation marks omitted).

## ARGUMENT

## PLAINTIFFS LACK STANDING TO SUE FOR ALLEGED INJURIES TO THE LEGISLATURE IN WHICH THEY SERVE

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies,'" and "[o]ne element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Standing requires courts to satisfy themselves that

"the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975).  Standing doctrine also "serves to protect the 'autonomy' of those who are most directly affected so that they can decide whether and how to challenge the defendant's action." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 379-80 (2024); *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (standing doctrine "limits the category of litigants empowered to maintain a lawsuit" over a particular "legal wrong").

"Legislators, like other litigants in federal court, must satisfy the jurisdictional prerequisites of Article III standing." *Russell v. DeJongh*, 491 F.3d 130, 133 (3d Cir. 2007).  "[A] plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Alliance for Hippocratic Med.*, 602 U.S. at 380.  A cognizable injury must be "concrete and particularized," meaning that it "must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992).  Standing doctrine thus ensures that a plaintiff "generally must assert his own legal rights and

interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499.

## A.    Under Well-Established Precedent, Individual Legislators Lack Standing to Assert Institutional Injuries

**1.** As this Court recently explained, the "place to start" any analysis of legislator standing "is the Supreme Court's decision in *Raines v. Byrd*, 521 U.S. 811 (1997)." *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 311 (3d Cir. 2022). In *Raines*, six Members of Congress who had unsuccessfully opposed passage of the Line Item Veto Act brought suit seeking to declare the Act unconstitutional. They contended that the Act injured them by "alter[ing] the legal and practical effect of [their] votes" and by "divest[ing] [them] of their constitutional role in the repeal of legislation." 521 U.S. at 816 (quotation marks omitted).

The Supreme Court held that the plaintiffs lacked a "sufficient 'personal stake'" in the dispute. *Raines*, 521 U.S. at 830. The Court explained that Members of Congress suing on their own behalf must demonstrate standing by "claim[ing] that they have been deprived of something to which they *personally* are entitled"—that is, by asserting harm in a "private capacity." *Id.* at 821. The legislators in *Raines*, however, were complaining of a "loss of political power, not loss of any private right." *Id.* Their claimed injury "runs (in a

11

sense) with [each] Member's seat," which he holds "as trustee for his constituents, not as a prerogative of personal power." *Id.* Indeed, "[i]f one of the Members were to retire tomorrow, he would no longer have a claim." *Id.* The Court concluded that because the plaintiffs' claims alleged only a general "diminution of legislative power" rather than impairment of any right inhering in Members of Congress individually, plaintiffs' suit must be dismissed. *Id.*[4]

In reaching that conclusion, *Raines* distinguished the "one case" in which the Supreme Court had ever recognized "standing for legislators … claiming an institutional injury." 521 U.S. at 821. In that case, *Coleman v. Miller*, 307 U.S. 433 (1939), a group of Kansas state senators brought suit in state court—and later sought review by the U.S. Supreme Court—contending that their collective votes against a federal constitutional amendment had been nullified through an unlawful intervention in legislative procedures that led to the amendment being deemed ratified. Though *Coleman* had made general reference to the state senators' asserted "interest in maintaining the

---

[4] The Supreme Court reached that conclusion in *Raines* even though Congress had enacted an express cause of action purporting to allow the plaintiffs to sue. As the Court emphasized, because the Members' asserted injury was an "institutional" one, the relevant claim belonged to Congress as a whole, and Congress had never "authorized [the plaintiffs] to represent their respective Houses of Congress in this action." 521 U.S. at 821, 829; *see id.* at 829 n.10 ("Generally speaking, members of collegial bodies do not have standing to [take litigative actions] the body itself has declined to take.") (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 544 (1986)).

effectiveness of their votes," *id.* at 438, the Supreme Court in *Raines* squarely

rejected the proposition that *Coleman* affords any generally available basis for

individual legislators to redress legislative harms.  Instead, *Coleman* stands "at

most" for "the proposition that legislators whose votes would have been

sufficient to defeat (or enact) a specific legislative Act have standing to sue if

that legislative action goes into effect (or does not go into effect), on the ground

that their votes have been completely nullified." *Raines*, 521 U.S. at 823.[5]

The Supreme Court has repeatedly reaffirmed *Raines*' reasoning and has

applied it to claims by state legislators.  In *Virginia House of Delegates v. Bethune-

Hill*, 587 U.S. 658 (2019), the lower house of Virginia's bicameral legislature

attempted to appeal a judicial decision invalidating a state redistricting statute.

*Id.* at 660-61.  But Virginia's constitution "allocate[d] redistricting authority to

the 'General Assembly,' of which the House constitutes only a part." *Id.* at

659.  Applying *Raines*, the Court held that the suit could not proceed,

reasoning that "[j]ust as individual members lack standing to assert the

institutional interests of a legislature, a single House of a bicameral legislature

---

[5] Having distinguished *Coleman* on that basis, the Supreme Court
declined to decide whether *Coleman* should be further cabined for other
reasons.  *See Raines*, 521 U.S. at 824 n.8.

lacks capacity to assert interests belonging to the legislature as a whole." *Id.* at 667 (citing *Raines*, 521 U.S. at 829; other citation and footnote omitted).

Similarly applying *Raines*, the Supreme Court concluded in *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787 (2015), that the plaintiff legislature had standing to sue because the "institutional injury" was asserted by the correct "institutional plaintiff," which had duly voted to bring suit. *Id.* at 802. That is, unlike in *Raines* or *Bethune-Hill*, there was "no mismatch between the [persons] seeking to litigate and the body to which the relevant constitutional provision allegedly assigned exclusive redistricting authority." *Bethune-Hill*, 587 U.S. at 667 (discussing *Arizona State Legislature*, 576 U.S. at 799-802).

**2.** This Court likewise has repeatedly applied "the well-established principle that individual legislators lack standing to assert institutional injuries belonging to the legislature as a whole." *Yaw*, 49 F.4th at 311.

In *Russell v. DeJongh*, a Virgin Islands legislator sought to challenge the Governor's failure to comply with a statutory deadline for submitting certain judicial nominations, arguing that "the Governor's refusal to honor th[at] deadline injure[d] him by 'nullifying his vote' in favor of that law." 491 F.3d at 134. This Court rejected that asserted basis for standing, explaining that "an official's mere disobedience or flawed execution of a law for which a legislator

14

voted" is not a cognizable Article III injury. *Id.* This Court readily distinguished *Coleman v. Miller* and other cases that had found legislator standing, explaining that those cases involved an alleged "distortion of the process by which a bill becomes law" rather than an impairment to the effectiveness of a duly enacted statute. *Id.* at 135 (quotation marks omitted).

Similarly, in *Goode v. City of Philadelphia*, 539 F.3d 311 (3d Cir. 2008), five councilmembers sought to challenge a litigation settlement concluded by the City's executive, alleging that the settlement terms had "usurp[ed] [the] City Council's exclusive power to repeal or amend existing ordinances." *Id.* at 316 (quotation marks omitted). This Court rejected that argument, explaining that the plaintiff councilmembers had alleged no "particularized injury" but instead were complaining about alleged nonenforcement of an ordinance. *Id.* at 320. The Court reiterated that "once a bill has become law, a legislator's interest in seeing that the law is followed is no different from a private citizen's general interest in proper government." *Id.* at 317 (quoting *Russell*, 491 F.3d at 135). The Court also rejected the plaintiffs' assertion that "Pennsylvania state law would have afforded [them] standing … in state court," explaining that standing to sue in federal court is governed by Article III. *Id.* at 321.

Most recently, in *Yaw*, two state senators (among others) sought to challenge a regulation banning hydraulic fracking in the Delaware River basin,

alleging that a commission formed by an interstate compact had "attempted to exercise legislative authority exclusively vested in the General Assembly" and thereby "substantially diminishe[d] the legislative powers" of the plaintiff individual legislators.  49 F.4th at 313-14 (quotation marks omitted).  This Court explained that those allegations were "classic examples of institutional injuries" that "sound in a general loss of legislative power" affecting "'all [members of the General Assembly] equally.'"  *Id.* at 314 (alteration omitted) (quoting *Raines*, 521 U.S. at 821).  And as the Supreme Court has made clear, "'individual members lack standing to assert the institutional interests of a legislature.'"  *Id.* (quoting *Bethune-Hill*, 587 U.S. at 667).

This Court's cases accord with the decisions of numerous other courts of appeals applying *Raines* in the same manner.  *See, e.g.*, *Crawford v. U.S. Dep't of the Treasury*, 868 F.3d 438, 453-54, 460 (6th Cir. 2017) (applying *Raines* in dismissing U.S. Senator's claim that he was denied his constitutional right to vote on intergovernmental agreements); *Kerr v. Hickenlooper*, 824 F.3d 1207, 1216-17 (10th Cir. 2016) (holding that state legislators lacked standing to challenge provision of Colorado Constitution limiting the legislature's taxing powers, reasoning that the plaintiffs were "individually disempowered only concomitantly as a result of [the amendment's] diminution of the General Assembly's authority as an institution"); *Alaska Legislative Council v. Babbitt*,

181 F.3d 1333, 1338 (D.C. Cir. 1999) (holding that state legislators lacked standing to challenge validity of federal law that allegedly impaired their ability to enact state law, ruling that "[t]heir supposed injury [wa]s nothing more than an 'abstract dilution of institutional legislative power'"); *Chenoweth v. Clinton*, 181 F.3d 112 (D.C. Cir. 1999) (dismissing claim by Members of Congress that executive order denied them their constitutional role in the legislative process).

## B.   The Foregoing Principles Are Dispositive of Plaintiffs' Suit

The district court correctly applied these principles in concluding that plaintiffs lack standing to assert their claims.

First, this lawsuit alleges only institutional harm. Plaintiffs do not allege that "they have been deprived of something to which they *personally* are entitled—such as their seats [in the General Assembly] after their constituents had elected *them*." *Raines*, 521 U.S. at 821. Rather, the theory of plaintiffs' claims against federal defendants is that the President's issuance of EO 14019, and federal agencies' subsequent implementation of that Order, have encroached upon the constitutional prerogatives of state legislatures and minimized the effectiveness of Pennsylvania SB 982, a bill for which some plaintiffs here had voted (but which others opposed, *see infra* p. 22 n.7).

But the constitutional provisions on which plaintiffs' claims rest—the Electors and Elections Clauses of the U.S. Constitution—each expressly vest

authority in "the Legislature" of "each State," not in individual legislators. U.S. Const. art. I, § 4, cl. 1; *id.* art. II, § 1, cl. 2; *see supra* p. 5 n.2.  Thus, as the district court recognized, plaintiffs necessarily allege harm "to the authority of the Pennsylvania General Assembly."  App. 24-25.  To the extent that individual legislators can be thought to share in that harm, it is an injury that "necessarily damages all" of the General Assembly's "[m]embers … equally," and thus is not particularized to plaintiffs.  *Raines*, 521 U.S. at 821.

Second, plaintiffs lack standing to litigate those institutional injuries. Neither the Commonwealth of Pennsylvania nor the General Assembly has requested or authorized these plaintiffs to litigate on its behalf.  App. 26 n.16. Plaintiffs thus face an inescapable "mismatch between the [persons] seeking to litigate and the body to which the relevant constitutional provision allegedly assigned exclusive … authority."  *Bethune-Hill*, 587 U.S. at 667.  As this Court has reaffirmed since *Raines*, plaintiff legislators lack standing to sue under these circumstances.  *See, e.g.*, *Yaw*, 49 F.4th at 313-14 (an alleged usurpation of "legislative authority exclusively vested in the General Assembly" was a "classic example[] of [an] institutional injur[y]" that did not give legislators standing); *Goode*, 539 F.3d at 314-16 (similar).

### C.    Plaintiffs' Contrary Arguments Are Unavailing

**1.**  Plaintiffs' various contentions identify no error in the foregoing analysis.  Their principal submission on appeal—that the district court "erred by characterizing [plaintiffs'] injuries as merely institutional," Br. 15—is contradicted by both precedent and constitutional text.  Plaintiffs' theory of personal harm rests on the unfounded premise that "it is the individual legislator who determines, by the authority granted to him or her, through the Elections Clause … the manner of federal elections within the state."  Br. 45; *see* Br. 46 (same assertion as to Electors Clause).  Yet as plaintiffs elsewhere correctly concede, the "entity assigned particular authority by the Federal Constitution" is "the state legislature" (Br. 47), not individual legislators.

Plaintiffs are not the legislature.  As plaintiffs emphasize (Br. 36), the General Assembly acts through the assembly of, and by majority vote of, its members.  Thus, just like Congress, "[p]ower is not vested in any one individual, but in the aggregate of the members who compose the body, and its action is not the action of any separate member or number of members, but the action of the body as a whole."  *Raines*, 521 U.S. at 829 n.10 (quoting *United States v. Ballin*, 144 U.S. 1, 7 (1892)).

Plaintiffs concede that the General Assembly has "the sole legislative power to pass laws," Br. 4, and thus recognize that each legislator cannot

individually enact his or her own preferred election laws without the concurrence of a majority of other members.  It follows that a legislator who cannot himself unilaterally enact laws has no individual "constitutional right and duty to regulate the manner of federal elections."  Br. 17.

Contrary to plaintiffs' assertion, nothing about the Elections or Electors Clauses warrants a different analysis.  The Elections Clause expressly confers authority upon "the Legislature" of "each State," as does the Electors Clause. U.S. Const. art. I, § 4, cl. 1; *id.* art. II, § 1, cl. 2.  As plaintiffs themselves urge, the Framers' choice to vest authority "in 'the Legislature'" is "a 'deliberate choice that this Court must respect.'"  Br. 51 (quoting *Moore v. Harper*, 600 U.S. 1, 34 (2023)).  As the district court correctly explained, plaintiffs' alleged harm "is to the authority of the Pennsylvania General Assembly to establish the times, places, and manner of elections as provided by the Constitution," App. 25, which is a quintessentially institutional harm under *Raines*' logic.

Moreover, the Supreme Court and this Court have repeatedly applied the principles articulated in *Raines* without regard for the substantive legal basis for the legislator's cause of action.  Indeed, the Supreme Court's decision in *Arizona State Legislature* likewise involved an alleged Elections Clause injury, and the Court held that standing there existed only because the case involved an "institutional plaintiff asserting an institutional injury."  576 U.S. at 802; *see*

*Bethune-Hill*, 587 U.S. at 667 (explaining that "there was no mismatch" in *Arizona State Legislature*).

Plaintiffs' effort to distinguish *Raines* on its facts is unpersuasive. Nothing in the reasoning of *Raines* or subsequent decisions by the Supreme Court or this Court limits the standing analysis to "members of Congress who lost a legislative vote to colleagues." Br. 40. That was not the plaintiffs' argument in *Raines* itself, which instead involved an alleged usurpation of legislative power by the President pursuant to an Act of Congress. And subsequent cases applying *Raines* have involved various fact patterns as discussed above. Thus, as this Court has recognized, *Raines* stands for a much more general principle and articulates an overarching framework for distinguishing "personal[]" from "institutional" injuries, on which courts have repeatedly relied. *Yaw*, 49 F.4th at 311-12 (quoting *Raines*, 521 U.S. at 821) (emphasis omitted); *see also id.* at 315 (applying *Raines* and rejecting theory under which "*any* individual legislator would have standing to challenge *any* federal statute or regulation" allegedly preempting "state lawmaking") (quotation marks omitted).

Plaintiffs' reliance on *Dennis v. Luis*, 741 F.2d 628 (3d Cir. 1984), likewise demonstrates their misunderstanding. That case—which preceded the Supreme Court's decision in *Raines*—held that the individual plaintiffs had

adequately pled a basis for standing by alleging an impairment to a "unique statutory right to advise the Governor" vested "in members of the legislature." *Id.* at 631. As this Court later explained, the *Dennis* plaintiffs survived a threshold standing dismissal only because they claimed an "[in]ab[ility] to exercise their rights as legislators." *Goode*, 539 F.3d at 318 (discussing *Dennis*, 741 F.2d at 631). Here, by contrast, plaintiffs do not assert any cognizable injury "peculiar to the legislators" as individuals, *Dennis*, 741 F.2d at 631, but rather, they allege an encroachment upon the General Assembly's authority to superintend elections within the Commonwealth of Pennsylvania.[6]

Plaintiffs' observation that certain plaintiffs voted in favor of SB 982, while other legislators (including some plaintiffs) voted against it, does not suffice to show the particularized, personal injury required by Article III.[7]

---

[6] Contrary to plaintiffs' suggestion, *Dennis* did not hold broadly that "members of the legislature" always have individual standing to litigate institutional injuries, and *Raines* and this Court's subsequent cases obviously foreclose any such understanding.

[7] The votes for final passage were 46-4 in the Senate and 103-96 in the House. Eight plaintiffs voted in favor of the bill (Representatives Bernstine, Bonner, Cook, Jozwiak, Moul, Rapp, Twardzik, and Senator Dush); eleven plaintiffs voted against it (Representatives Keefer, Borowicz, Gillen, Gleim, Hamm, M. Jones, Kauffman, Maloney, Rossi, Rowe, and Zimmerman); and the remaining eight plaintiffs were not then serving in the General Assembly (Representatives Brown, Cooper, D'Orsie, Fink, T. Jones, Krupa, Leadbeter, and Stehr). See Penn. State Senate, Senate Roll Calls No. 704 (July 7, 2022), https://perma.cc/4QYQ-7WTH; Penn. House of Representatives, House Roll Calls No. 1148 (July 8, 2022), https://perma.cc/N4E5-349A.

Plaintiffs do not allege that their individual votes went uncounted or were deemed invalid.  Rather, plaintiffs acknowledge that their respective votes were given effect and that SB 982 was duly enacted, but maintain that defendants' actions have now overridden or impaired that law.  That assertion is erroneous, as the federal actions at issue here fully respect state law.  *See supra* pp. 3-4.  But for present purposes, it suffices that "once a bill has become law, a legislator's interest in seeing that the law is followed is no different from a private citizen's interest in proper government."  *Yaw*, 49 F.4th at 316 n.85 (quoting *Russell*, 491 F.3d at 135); *see Goode*, 539 F.3d at 319-20 (reaffirming that individual legislators lack standing to "assert claims based solely on the alleged 'disobedience or flawed execution of' enacted legislation").  This Court has already rejected prior arguments that the "main proponent" of an enacted bill suffers particularized injury sufficient for Article III standing.  *Russell*, 491 F.3d at 136.  It necessarily follows that a mere vote in favor of an enacted bill is similarly insufficient.

**2.**  This case in no way resembles the unusual "nullification" that had occurred in *Coleman v. Miller*, 307 U.S. 433 (1939), and plaintiffs' extensive discussion of that decision (Br. 31-43) fails to support their argument.

As noted, *Coleman* involved a lawsuit in state court by a bloc of state senators who asserted that their collective votes against ratification of a federal

constitutional amendment should have sufficed to defeat ratification, but instead were overridden by an improper tiebreaking vote. *Coleman* thus a dispute over legislative procedures: an alleged "distortion of the process by which a bill becomes law." *Russell*, 491 F.3d at 135 (quotation marks omitted); *accord Raines*, 521 U.S. at 823 (reasoning that *Coleman* "at most" supports standing in certain situations where a bill wrongly took or did not take effect). Here, by contrast, plaintiffs do not allege any interference with the General Assembly's internal voting procedures or rules: "[u]nlike *Coleman*, this case does not concern the results of a legislative chamber's poll or the validity of any counted or uncounted vote." *Bethune-Hill*, 587 U.S. at 669.[8]

Aside from *Coleman*, plaintiffs rely on no federal precedent, instead citing only several state court decisions (Br. 33-35). But those decisions do not bind this Court, and "[t]he fact that a party has standing in state court does not

---

[8] *Coleman* is inapposite for other reasons as well. The injury in *Coleman* involved an act of ratification which, unlike ordinary statutes, cannot readily be withdrawn through further legislation. *See Campbell v. Clinton*, 203 F.3d 19, 22-23 (D.C. Cir. 2000) (stating that this point "explains the very narrow possible *Coleman* exception to *Raines*"). Because *Coleman* originated in state court (where Article III's strictures do not apply), the question there concerned standing to seek review of a state court's interpretation of federal law, not standing to sue in the first instance. *See Raines*, 521 U.S. at 824 n.8. And *Coleman* involved a suit by a large enough group of legislators that, assuming their merits arguments were correct, they would have been numerically "sufficient" to control the legislative outcome. *Baird v. Norton*, 266 F.3d 408, 412 (6th Cir. 2001); *see also Chenoweth*, 181 F.3d at 117 (no *Coleman* standing absent the "necessary majorities"). None of those factors are present here.

mean that they have standing in federal court." *Yaw*, 49 F.4th at 316. Indeed, under Pennsylvania law, standing presents purely "prudential concerns." *Fumo v. City of Philadelphia*, 972 A.2d 487, 500 n.5 (Pa. 2009). New York law likewise does not map directly onto federal standing doctrine. *Cf. Silver v. Pataki*, 755 N.E.2d 842, 845 (N.Y. 2001) (per curiam). This Court has thus rejected other plaintiffs' attempts to rely on the Pennsylvania case, *Fumo v. City of Philadelphia*, and the New York case, *Silver v. Pataki*, on which plaintiffs rely here. *See, e.g.*, *Yaw*, 49 F.4th at 316; *Goode*, 539 F.3d at 318; *accord* App. 27-28.

In all events, plaintiffs' analogies to *Silver* and *Fumo* fail on their own terms. As this Court has previously explained, "*Silver* involved an alleged unlawful interference with the legislative process," *Goode*, 539 F.3d at 318: specifically, the Governor's exercise of an allegedly improper veto that "distort[ed] … the process by which a bill becomes law" and "left the plaintiff [legislators] with no effective remedies." *Russell*, 491 F.3d at 135 (discussing *Silver*, 755 N.E.2d 842). And in *Fumo*, the plaintiffs had standing not because they sought to "vindicate a power [of] … the General Assembly" but because they sought to a redress a "deprivation of [each] *legislator's* … [own] power or authority" that was cognizable under state law, even if not under federal law. *Fumo*, 972 A.2d at 501-02 (emphasis added); *cf. Yaw*, 49 F.4th at 316 (distinguishing *Fumo* and reaffirming that "usurpation of the state's lawmaking

power" is not individually cognizable in federal court) (quotation marks
omitted).

**3.** Plaintiffs' invocation of other bodies of law is likewise unsuccessful.
Plaintiffs urge (Br. 31) the Court to apply the "lens of § 1983-enforceable
rights," *i.e.*, the doctrinal framework for deciding whether Congress created an
individual statutory right enforceable under 42 U.S.C. § 1983.  That framework
is inapposite:  the question here is standing, not whether Congress created a
cause of action; no federal statute is at issue; and "neither [federal agencies]
nor the United States can be sued under § 1983."  *Polsky v. United States*,
844 F.3d 170, 173 (3d Cir. 2016) (per curiam); *see also Accardi v. United States*,
435 F.2d 1239, 1241 (3d Cir. 1970).

In any event, the analogy only hurts plaintiffs' argument.  A person
cannot sue under § 1983 unless Congress, "'speak[ing] with a clear voice,'"
has "manifest[ed] an 'unambiguous' intent to confer individual rights."
*Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002); *see id.* at 290-91 (no cause of
action where statute has "an aggregate, not individual, focus").  Here, as
discussed, the Electors and Elections Clauses unambiguously confer authority
upon "the Legislature" of "each State," not upon individual persons.  *See supra*
p. 5 n.2.  They thus do not use the "individually focused terminology" that a
§ 1983 suit would require.  *Gonzaga Univ.*, 536 U.S. at 287.

Plaintiffs' analogy to corporate law (Br. 46) likewise only undermines their position. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).[9] Claims of corporate injury must be litigated by or on behalf of the corporation. *See generally* 3 James D. Cox & Thomas Lee Hazen, *Treatise on the Law of Corporations* § 15.3 (3d ed.); *cf. Raines*, 521 U.S. at 820-21 (distinguishing "institutional" from "personal" injury). Shareholders "may not sue" on their own behalf for harms "result[ing] directly from injuries to the corporation," *In re Kaplan*, 143 F.3d 807, 811-12 (3d Cir. 1998), but must instead satisfy the procedural and substantive requirements to sue in a "derivative" (*i.e.*, representative) capacity on behalf of the corporation. *In re Cognizant Tech. Sols. Corp. Derivative Litig.*, 101 F.4th 250, 257 (3d Cir. 2024) (en banc).

Even assuming, by analogy, that plaintiffs here could litigate on the General Assembly's behalf if that body had duly authorized them to do so, plaintiffs have not shown that they have been conferred any such authority. *See* App. 26 & n.16 (recognizing that plaintiffs lack the "approval of the

---

[9] Plaintiffs' observation (Br. 46) that a "mere legal entity" like a corporation was originally indistinct from its "members" for jurisdictional purposes, *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016) overlooks that that has not been the state of the law for nearly 200 years. *See id.* (discussing 1844 case holding that corporations have distinct citizenship).

institution"). This case thus presents no possible exception to the "well-established principle that individual legislators lack standing to assert institutional injuries belonging to the legislature." *Yaw*, 49 F.4th at 311.

## CONCLUSION

For the foregoing reasons, the judgment should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

DANIEL TENNY
  *s/ Jeffrey E. Sandberg*
JEFFREY E. SANDBERG
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7214*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-4453*
  *jeffrey.e.sandberg@usdoj.gov*

  *Counsel for Federal Defendants-Appellees*

JULY 2024

28

## COMBINED CERTIFICATIONS

1.      Government counsel are not required to be members of the bar of this Court.

2.      This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,389 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Calisto 14-point font, a proportionally spaced typeface.

3.      On July 26, 2024, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

4.      The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

5.      This document was scanned for viruses using CrowdStrike Falcon and no virus was detected.


 *s/ Jeffrey E. Sandberg*
Jeffrey E. Sandberg
*Counsel for Federal Defendants-Appellees*