No. 24-1716

In The
United States Court of Appeals
for the Third Circuit

Representatives Dawn Keefer, Timothy Bonner, Barry Jozwiak, Barbara Gleim, Joseph Hamm, Wendy Fink, Robert Kauffman, Stephanie Borowicz, Donald (Bud) Cook, Paul (Mike) Jones, Joseph D'orsie, Charity Krupa, Leslie Rossi, David Zimmerman, Robert Leadbeter, Daniel Moul, Thomas Jones, David Maloney, Timothy Twardzik, David Rowe, Joanne Stehr, Aaron Bernstine, Kathy Rapp, Jill Cooper, Marla Brown, Mark Gillen and Senator Cris Dush—All Pennsylvania Legislators,

Plaintiffs–Appellants,

v.

Joseph R. Biden, in his official capacity as the President of the United States, or his successor; United States; U.S. Department of Agriculture; Tom Vilsack, in his official capacity as Secretary of Agriculture; U.S. Department of Health and Human Services; Xavier Becerra, in his official capacity as Secretary of Health and Human Services; U.S. Department of State; Antony Blinken, in his official capacity as Secretary Of State; U.S. Department of Housing and Urban Development; Marcia Fudge, in her official capacity as Secretary of Housing and Urban Development; U.S. Department of Energy; Jennifer Granholm, in her official capacity as Secretary of Energy; U.S. Department of Education; Dr. Miguel Cardona, in his official capacity as Secretary of Education; Josh Shapiro, in his official capacity as Governor of Pennsylvania, or his successor; Al Schmidt, in his official capacity as Secretary of the Commonwealth, or his successor; Jonathan Marks, in his official capacity as the Deputy Secretary for Elections and Commissions, or his successor,

Defendants–Appellees.

On appeal from the United States District Court for the Middle District of Pennsylvania, docket no. 1:24-CV-00147

**Reply Brief of Plaintiffs-Appellants**

Erick G. Kaardal, WI 1035141
Elizabeth A. Nielsen, PA 335131
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: (612) 341-1074
Email: kaardal@mklaw.com
Email: nielsen@mklaw.com

Karen T. DiSalvo, PA 80309
Mohrman, Kaardal & Erickson, PA
Election Research Institute
1451 Quentin Rd Ste 232
Lebanon, PA 17042
Email: kd@election-institute.com
*Attorneys for Appellants*

Jeffrey E. Sandberg
Daniel Tenny
U.S. Department of Justice, Civil
Division, Appellate Staff
950 Pennsylvania Avenue NW
Room 7214/7215
Washington, DC 20530
Telephone: 202-532-4453
Telephone: 202-514-1838
Email:jeffrey.e.sandberg@usdoj.gov
Email: daniel.tenny@usdoj.gov
*Attorneys for Federal Appellees*

Jacob B. Boyer
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
Telephone: (717) 460-6786
Email: acobboyer@pa.gov
*Attorneys for Pennsylvania State Appellees*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF CITATIONS ............................................................. ii

ARGUMENT ............................................................................ 1

I.    The 27 Legislator Plaintiffs continue to suffer individual, concrete injuries, and controlling Supreme Court precedent lays the foundation for their standing ...... 1

    A. Legislator-Appellants are proper plaintiffs to bring *Coleman* Claims for the nullification of their individual votes and legislator actions. ................................................................. 2

    B. Legislator-Appellants are not excluded by *Raines*, unlike other cases which failed to bring full *Coleman* claims. .................................. 6

II.    The State defendants overstepped the bounds of the legislature's prescribed voter registration system and flipped their requirements upside-down............... 14

CONCLUSION .......................................................................... 20

CERTIFICATE OF COMPLIANCE .......................................... 21

USE OF AI TECHNOLOGY CERTIFICATION ....................... 22

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Arizona State Legislature v. Arizona Independent Redistricting Commission,*
576 U.S. 787 (2015) ............................................................................................................. 8

*Coleman v. Miller,*
307 U.S. 433 (1939) ....................................................................................................passim

*Common Cause of Pennsylvania v. Pennsylvania,*
558 F.3d 249 (3d Cir. 2009) ..................................................................................... 12, 13

*Dennis v. Luis,*
741 F.2d 628 (3d Cir. 1984) ....................................................................................passim

*Department of Transportation v. Association of American Railroads,*
575 U.S. 43 (2015) ............................................................................................................. 3

*Goode v. City of Philadelphia,*
539 F.3d 311 (3d Cir. 2008) ..................................................................................... 11, 12

*Loper Bright Enterprises v. Raimondo,*
144 S. Ct. 2244 (2024) ..................................................................................................... 3

*Moore v. Harper,*
600 U.S. 1 (2023) ............................................................................................................. 4

*Patterson v. Burlow,*
60 Pa. 54 (1869) ............................................................................................................. 15

*Raines v. Byrd,*
521 U.S. 811 (1997) ............................................................................................. 2, 6, 7, 8

*Russell v. DeJongh,*
491 F.3d 130 (3d Cir. 2007) ..................................................................................... 10, 11

*Silver v. Pataki,*
755 N.E.2d 842 (2001) .................................................................................... 4, 5, 11, 12

*Virginia House of Delegates v. Bethune-Hill,*
   587 U.S. 658 (2019) ............................................................................... 8

*Winston v. Moore,*
   91 A. 520 (Pa. 1914) ............................................................................. 15

*Yaw v. Delaware River Basin Comm'n,*
   49 F.4th 302 (3d Cir. 2022) ........................................................... 3, 13, 14

**Statutes**

23 Pa.C.S. § 1323(a)(2) .......................................................................... 15

25 Pa.C.S. § 1321 ................................................................................. 15

25 Pa.C.S. § 1325 ................................................................................. 19

25 Pa.C.S. § 1325(a) ............................................................................. 16

25 Pa.C.S. § 1325(b) ............................................................................. 16

Pennsylvania Constitution Article VII, Section 1 ....................................... 4, 15

U.S. Const., Art. I ............................................................................... 3, 15

U.S. Const., Art. II, § 1, cl. 2 .................................................................. 4

**Other Authorities**

Elizabeth Earle Beske, *Litigating the Separation of Powers,*
   73 Ala. L. Rev. 8235 (2022) ...................................................................... 2

William D. Gohl, *Standing Up for Legislators: Reevaluating Legislator Standing in the
   Wake of Kerr v. Hickenlooper,* 110 Nw. U. L. Rev. 1269 (2016) ...................... 5

The 27 Legislator-Appellants file this reply brief in support of their appeal. They continue to suffer individual, concrete injuries, and controlling Supreme Court precedent lays the foundation for their standing. The Federal defendants have overstepped their function by attempting to control, through EO14019, a specific subject area particularly vested in state legislatures. The State defendants overstepped the bounds of the legislature's perscribed voter registration system and flipped their requirements upside-down.

## ARGUMENT

**I. The 27 Legislator-Appellants continue to suffer individual, concrete injuries, and controlling Supreme Court precedent lays the foundation for their standing.**

The 27 Legislator-Appellants are not seeking a different result from the courthouse from that which they achieved in the legislature, but rather to protect their votes and legislative actions given to them under the Elections Clause from unlawful encroachments by the Federal and State executive branches. The path Legislator-Appellants set upon to reach the courthouse doors is narrow, but paved, as they allege *Coleman* claim injury to their Constitutional rights and duties as individual legislators to regulate the time, place, and manner of federal elections. *Coleman v. Miller*, 307 U.S. 433 (1939). Both President Biden and the State defendants argue that the Legislators only alleged institutional injuries to the legislature itself, and thus that they lack the kind of particularized injury (as for a *Coleman*-type claim) required to be justiciable

under Article III. However, they reach that conclusion only by misreading *Raines v. Byrd*, 521 U.S. 811 (1997), and mischaracterizing this Court's earlier, but still-standing precedent in *Dennis v. Luis*, 741 F.2d 628 (3d Cir. 1984).

A.    **Legislator-Appellants are proper plaintiffs to bring**
      ***Coleman* Claims for the nullification of their individual**
      **votes and legislator actions.**

Fundamentally, the Legislator-Appellants allege *Coleman*-based claims, which can be broken-down into three elements: (1) a proper coordinate branch target, (2) usurpation of a Constitutional legislative prerogative, and (3) either a sufficient number of plaintiffs who were denied participation in a Constitutional process, or plaintiffs whose participation in the processes granted to them were sufficient, but-for the injury alleged. *Coleman v. Miller*, 307 U.S. 433 (1939); *see* Elizabeth Earle Beske, *Litigating the Separation of Powers*, 73 Ala. L. Rev. 823, 874–75 (2022) (distilling a three-part framework for *Coleman* claims in light of *Raines* and subsequent cases).

To start with (1), a proper coordinate branch target, Legislator-Appellants have selected appropriate *Coleman* claim defendants. The State Defendants are part of the coordinate executive branch of state government. The federal executive branch defendants are not a *coordinate* branch, but are part of a separate governmental branch in the federal relationship. Unlike the plaintiffs in *Raines*, none of the injuries the Legislator-Appellants brought to the court were self-inflicted.

Next, in their Coleman claim, Legislator Appellants allege (2) usurpation of a Constitutional Legislative prerogative, primarily that conferred to them through the

2

Elections Clause. Legislator-Appellants are not challenging "any" law, or a vague dilution of power, but specific executive usurpations of the legislative authority and duty conferred to them by the U.S. Constitution directly by the Elections and Electors Clauses. The claims at issue are not similar to those for which two individual legislators did not have standing, such as *Yaw*, because the *Yaw* plaintiff-legislators alleged only a general usurpation of what they believed should have been a legislative decision, and not usurpation of a specific Constitutionally-conferred authority and duty. *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 314 (3d Cir. 2022).

The Federal defendants have overstepped their function by attempting to control, through EO14019, a specific subject area particularly vested in state legislatures. As Justice Thomas recently summarized in a concurring opinion, the Executive Branch is constrained by the Constitution to only exercise executive power:

> When the Government is called upon to perform a function that requires an exercise of legislative, executive, or judicial power, only the vested recipient of that power can perform it. Because the Constitution gives the Executive Branch only "[t]he executive Power, executive agencies may constitutionally exercise only that power. Art. II, §1, cl.1."

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2274 (2024) (Thomas, J., concurring) (citing *Department of Transportation v. Association of American Railroads*, 575 U.S. 43, 68 (2015) (Thomas, J., concurring)).

The Elections Clause of the U.S. Constitution assigns the duty of determining the time, place, and manner of elections to state legislatures. (U.S. Const., Art. I, Sec. 4,

Cl.1). The Electors Clause grants state legislators plenary federal authority to enact statutes governing presidential elections. (U.S. Const., art. II, § 1, cl. 2). Pursuant to the U.S. Constitution, it is the state legislators that must draft, pass and enact a complete code of regulations regulating federal elections. (*See Moore v. Harper*, 600 U.S. 1 (2023)). And, article VII, Section 1 of the Pennsylvania Constitution, clearly places the duty of passing laws involving the registration of Pennsylvania electors on Pennsylvania's state legislators.

Finally, (3), Legislator-Appellants were all individually part of processes in which their votes contributed to the successful legislative action. It is true that not all the commonwealth legislators who contributed to the votes that passed the relevant bill decided to join as plaintiffs in the present lawsuit. It is also true that not all the legislators whose actions in committees aided in the successful rejection of Automatic Voter Registration chose to be plaintiffs either. However, to say that the minimum number of plaintiffs required for Article III standing is more than one state legislator misreads both *Raines* and *Coleman*.

The Court of Appeals of New York's decision in *Silver v. Pataki*, which found standing for a single legislator bringing a *Coleman* claim, explained how *Raines* does not require a different result for individual legislator standing when no legislative political battle had been lost. *Silver v. Pataki*, 755 N.E.2d 842, 848 (2001). This is because the nullification of the individual legislator's personal vote "continues to exist whether or not other legislators who have suffered the same injury decide to join in the suit." *Id.*

at 849. The Court of Appeals of New York further explained in a footnote why it rejected the idea that a controlling bloc of legislators would be required for a lawsuit, and indeed, how a less than a controlling bloc supports characterizing the injury as personal to the one(s) who bring the claim to the court:

> In the dissent's view, only "a sufficient voting bloc" of legislators who voted for the bills in question could act as plaintiffs in the absence of a Resolution of the Assembly authorizing a lawsuit. Under that analysis, it would seem that all who voted for the bills in question would need to join. Thus, a suit could be blocked by one legislator who chose, for whatever reason, not to join in the litigation. Such a result would place too high a bar on judicial resolution of constitutional claims. However, if a "sufficient voting bloc" is less than all legislators who voted for the bill, the injury cannot be characterized as institutional and must be viewed as personal to those who assert the claim

*Id.* at 849 n.7 (internal citation omitted).

The New York Court of Appeals is correct. In this case, requiring a majority of state legislators to join the suit as plaintiffs creates "too high a bar" on federal court resolution of constitutional claims. Thus, under Article III, a "sufficient voting bloc" of state legislators is not required to bring a properly-pled Elections Clause legislative usurpation claim in federal court.

Instead, the Article III requirement is that at least <u>one</u> state legislator must bring the claim against the federal or state officials. *See* William D. Gohl, *Standing Up for Legislators: Reevaluating Legislator Standing in the Wake of Kerr v. Hickenlooper,* 110 Nw. U. L. Rev. 1269, 1296-98 (2016) ("[L]imiting legislators' cognizable injuries in fact to nullifications of recorded votes misreads *Raines* and misunderstands the legislative

function…If a legislator can identify an enumerated institutional power that has been unlawfully curtailed, then the legislator satisfies Article III's injury-in-fact requirement."). That Article III requirement has been met in this case too because 27 injured Legislator-Appellants have filed this lawsuit.

**B.   Legislator-Appellants are not excluded by *Raines*, unlike other cases which failed to bring full *Coleman* claims.**

In *Raines v. Byrd,* 521 U.S. 811 (1997), six disgruntled members of Congress who had voted against the Line Item Veto Act, which was enacted and signed into law, filed suit seeking a declaratory judgment that the Act was unconstitutional. *Raines,* 521 U.S. at 814-17. In denying standing, the Court noted that the plaintiffs' asserted injury to their legislative power was, in a real sense, inflicted by Congress upon itself. Indeed, the plaintiffs had tried and failed to persuade Congress not to pass the Act. When Congress considered the Line Item Veto Act, the plaintiffs' votes "were given full effect. [Plaintiffs] simply lost that vote." *Id.* at 824.

The *Raines* Court expressed doubts that individual legislators who had lost a legislative battle could ever establish standing to assert a resulting injury on behalf of either their chamber or Congress itself. In such a case, the Court stated, the plaintiffs' quarrel was with their colleagues in Congress and not with the executive branch. *Id.* at 830, n.11. The Court expressed a deep reluctance to let members who had lost a battle in the legislative process seek judicial intervention by invoking an injury to Congress as a whole. Further, those in Congress who had wanted to, and successfully passed the

Line Item Veto Act continued to think differently than the *Raines* Plaintiffs. In fact, the Senate, together with the House leadership filed an amicus brief urging the Line-Item Veto Act be upheld. See *Id.* at 818, n.2. The *Raines* plaintiffs' allegations were, the Court held, insufficient to establish a judicially cognizable vote nullification injury of the type at issue in *Coleman*. *Id.* at 824.

The *Raines* court declined to overturn *Coleman*, and instead suggested that to establish legislative standing on their own behalf, individual legislators may show vote nullification of the sort at issue in *Coleman*: that a specific legislative vote was "completely nullified" despite a legislator-plaintiff having cast a vote that was "sufficient to defeat (or enact)" the act. *Id.* at 823.

In this case, Legislator-Appellants' "quarrel" is not with their colleagues, but with the federal and state executive branches. The Petitioners have not lost a battle in the legislative process, instead, they have succeeded. Unlike *Raines*, the Legislator-Appellants have not, "simply lost that vote" and then sought to have the law invalidated. The Legislator-Appellants alleged injuries come from successful individual contributions, including votes they actually won in the legislature regarding the time, place, and manner of elections.

Just as in *Coleman*, Legislator-Appellants' votes (and other individual legislator actions) have been overridden and held for naught through executive actions that purport to alter the time, place, and manner of elections. Just as in *Coleman*, the legislators' votes have been "stripped of their validity," and the Legislator-Appellants'

votes have been "denied [their] full validity in relation to the votes of their colleagues." *Id.* at 824 n.7. And, just as in *Coleman,* Petitioners are not alleging a vague dilution of power, but seek specific recovery based upon rights and privileges granted to them through the U.S. Constitution. *Coleman*, 307 U.S. at 438. *Raines* only contemplated the standing of members of Congress who lost a legislative vote to Congressional colleagues. *Raines* is silent on standing of state legislators who prevailed in legislative votes but whose votes were supplanted by the coordinate state, or federal executive branches. Moreover, *Raines* is silent on the preemptive effect of an executive action that properly belongs to the legislature.

Other cases cited by both State and Federal Defendants, in which legislator standing was not available, are unlike the present case and failed at least in-part because they did not fully allege *Coleman* claims. First, as explained in Legislator-Appellants' principal brief, neither *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787 (2015) (finding standing for the entire Arizona State legislature as a whole), nor *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658 668 (2019) (holding no standing in circumstances where the Virginia house continued alone without the state senate), address individual state legislator standing. Leg.-Apps. Br. at 31. Instead, those two cases concern claims that specifically alleged institutional injury to legislatures as institutions. Here, Legislator-Appellants allege individual legislator standing, alleging that their injuries are personal and particularized, and not simply injuries to the Commonwealth's legislative branch as a whole.

In this Court, *Dennis v. Luis*, 741 F.2d 628 (3d Cir. 1984), while being a pre-*Raines* decision, has been continuously distinguished and cited favorably in post-*Raines* opinions. *Dennis* involved a suit for injunctive and declaratory relief brought by eight members of the Virgin Islands legislature. The legislators challenged the Governor's appointment of Arnold Golden as "acting" Commissioner of Commerce. The legislators' alleged injury was that the Governor had acted contrary to the doctrine of separation of powers by usurping and circumventing the process of advice and consent, which violated a basic *constitutional* power conferred upon the legislature. This Court characterized the separation of powers issue in *Dennis* this way:

> Thus, our problem involves determining the court's role when these separate, independent branches of government – the executive and the legislative – clash and cannot resolve their differences on their own political turfs. Should legislators be allowed to use the judicial process to force the executive branch to comply with "the law of the land?" Or, phrased differently, should legislators be able to use the court to implement a victory that was won in the legislative hall and ignored in the executive mansion?"

*Id.* at 632.

This Court noted that the legislator plaintiffs were not complaining of the "acts or omissions of [their] colleagues" that could be remedied through the legislative process but noted instead the real issue was that the Governor was unable "to recognize the legal limitations of his appointment powers." *Id.* at 633. This Court concluded that the legislators alleged a "personal and legally cognizable interest peculiar to the legislators." In holding that the legislators had standing, the court held:

"In short, this case concerns a flouting by the Governor of a law that has been in fact enacted. Consequently, we believe it appropriate for us to consider the case." *Id.* at 634. The Dennis individual legislator plaintiffs, brought a full Coleman claim with a proper coordinate branch target defendant, alleged an injury related to explicitly-vested prerogatives of the legislature, and they had a particular interest in those prerogatives because they were deprived of individually performing their legislative function.

Decades later, in *Russell v. DeJongh*, 491 F.3d 130 (3d Cir. 2007), plaintiff Senator Ronald Russell, an individual legislator from the Virgin Islands, asked this Court to consider whether he possessed standing to assert a claim that the governor had improperly appointed justices to the Virgin Islands Supreme Court. Senator Russell alleged that the expiration of a statutory 90-day deadline extinguished the governor's authority to submit nominations, and argued that therefore, the governor's decision to ignore the deadline nullified his vote of the law that had created the deadline. The Russell plaintiff sought a declaration that the governor's nominations were void. Quoting *Coleman v. Miller*, the court explained: "The Supreme Court, this Court, and others have held that legislators have a legally protected interest in their right to vote on legislation and other matters committed to the legislature, which is sometimes phrased as an interest in 'maintaining the effectiveness of their votes.'" Id. at 134 (citing *Coleman*, 307 U.S. at 438) (also *citing* later Dennis, 741 F.2d at 631).

This Court highlighted that there is a distinction between cases where legislator plaintiffs had legislative remedies available to them (and thus, no injury in fact for legislator standing in court) and circumstances where no other effective remedies exist in the political process (resulting in an injury for individual legislator standing):

> The courts have drawn a distinction, however, between a public official's mere disobedience of a law for which a legislator voted—which is not an injury in fact—and an official's 'distortion of the process by which a bill becomes law' by nullifying a legislator's vote or depriving a legislator of an opportunity to vote – which is an injury in fact.

*Id.* at 135, *see also id.* at 134. This Court then continued and explained Senator Russell's facts were "readily distinguishable" from *Dennis v. Luis*, *Coleman*, as well as from the New York Court of Appeals case *Silver v. Pataki*. This Court mentioned "the challenged actions in those cases left the plaintiffs with no effective remedies in the political process." *Id.* at 135. Because Senator Russell conceded the legislature could confirm, reject, or defer voting on the Governor's late-submitted nominees, Russell's case fell short of the *Coleman* category of cases. *Id.* at 135-136.

Just a year after deciding *Russell*, this Court considered whether city council members had standing for a claim involving the legality of a settlement agreement in *Goode v. City of Philadelphia*, 539 F.3d 311 (3d Cir. 2008). The settlement agreement at issue in *Goode v. City of Philadelphia* involved the Philadelphia City Solicitor (acting on behalf of the City of Philadelphia) who entered into the agreement with certain Philadelphia billboard operators concerning the regulation of billboards in the city.

City Council Members filed suit claiming that by entering into the agreement, the Solicitor exceeded his executive authority, usurping the City Council's lawmaking powers. This Court denied the council members standing, but again preserved *Dennis v. Luis* and distinguished that case, as well as *Silver v. Pataki* from the city council members' claims:

> Here, in contrast to Dennis…the City Council appellants do not claim that they have been deprived of meaningful participation in the legislative process, or that they have been unable to exercise their rights as legislators. Instead, the allegations in their complaint concern the City's enforcement, or rather lack of enforcement, of the local ordinances that the Council already had enacted and thus this case involves only generalized complaints about the functioning of government.

*Id.* at 318-319. The injury alleged in *Goode* then fell short of a *Coleman* claim, and was fundamentally different from the individual legislator claims in both *Dennis* and *Silver*. *See id.*

This Court in *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249 (3d Cir. 2009) left the courthouse doors open to individual legislators for appropriate circumstances, even while denying standing to a sole legislator plaintiff who took issue with a middle-of-the-night voting procedure. *Id.* at 253. The plaintiffs included Pennsylvania citizens, the League of Women Voters, Common Cause of Pennsylvania, and one state representative, Gregory Vitali who together challenged a statute that increased the salaries of state legislators, executive officials and state judges. *Id.* The plaintiffs primarily challenged the manner in which the legislation was

enacted, taking issue with a middle of the night voting procedure which excluded most of the Pennsylvania legislature. Vitali's claim did not come close to satisfying the three parts of the *Coleman* claim framework.

In denying standing to the lone Pennsylvania legislator, the Third Circuit explained that "Vitali does not allege that he has suffered a direct and concrete injury specific to him, as a result of Defendants' challenged conduct." *Id.* at 266. Citing *Dennis v. Luis* and *Silver v. Pataki*, favorably, this Court distinguished Vitali's claim from those cases:

> The circumstances alleged in this case are much different. Here, Representative Vitali was not precluded from voting on Act 44… At most, Vitali merely alleges he was denied full input on the drafting and consideration of Act 44. But the denial was not specific to him; rather, its impact was felt by all legislators other than the select leadership. However, the legislative process inevitably involves a division of responsibilities, and leadership necessarily will have greater input in legislation being considered.

*Id.* at 267.

In all the cases where *Coleman* claims were attempted, as explained above, *Dennis v. Luis* was favorably cited. These include all of the post-*Raines* decisions relied upon by state Defendants in their brief. The Third Circuit simply could not apply the holding of *Dennis* to *Common Cause, Goode* and *Russell* because the facts were clearly distinguishable from those presented in *Dennis*.

State defendants rely on the more recent *Yaw v. Delaware River Basin Commission*, 49 F.4th 302, 310 (3d Cir. 2022) as an example of how this Court treats legislator

standing in light of *Raines*, *Arizona*, and *Va. House of Delegates*; however, *Yaw* is yet another example of an incomplete *Coleman* claim. While this Court did not address *Dennis* in its *Yaw* decision, there was no need as the *Yaw* facts are easily distinguished from *Dennis*, and more importantly, *Coleman*, which this Court did address. The senator plaintiffs challenging the Delaware River Basin Commission's fracking ban in *Yaw* were missing a critical piece to their *Coleman* claim as they did not allege usurpation of a specific constitutional legislative prerogative, but only a more vague general state "constitutionally enshrined fiduciary obligation" related to conserving natural resources from the state's Environmental Rights Amendment. *Id.* at 320. The text of the ERA amendment at issue in *Yaw* did not necessarily provide that the legislature specifically vested the *Yaw* plaintiffs with the trust of Pennsylvania's natural resources. *Id.* at 320. Therefore, there was no "usurpation of a Constitutional legislative prerogative" alleged for the purpose of a complete *Coleman* Claim. The situation in *Yaw* is wildly different from both the injury at-issue in *Coleman*, as well as *Dennis* and the injuries alleged by Legislator-Appellants.

## II. The State defendants overstepped the bounds of the legislature's prescribed voter registration system and flipped their requirements upside-down.

The State Defendants contend that they have unilaterally been delegated the task of establishing the voter registration scheme for Pennsylvania voters. State. Defs' Br. at 3, 21-22. Yet, the Pennsylvania Supreme Court has acknowledged "[t]he power to regulate elections is a legislative one, and has been exercised by the general

assembly since the foundations of government." *Winston v. Moore*, 91 A. 520, 522 (Pa. 1914) (citing *Patterson v. Burlow*, 60 Pa. 54 (1869). State defendants attempt to minimize the Governor's action complained of in Count IV of Legislator-Appellants Amended Complaint through characterizing his implementation of Automatic Voter Registration as only a "redesign" that merely changes an opt-in to an opt-out; however, this characterization turns existing Pennsylvania election code on its head. *E.g.*, State. Defs' Br. at 3, 21-22; App.48-53 (Amended Complaint ¶¶ 109-138, related factual allegations); App.64-65 (Amended Complaint ¶¶ 212-219, Count IV).

Not only does the U.S. Const. Art. I § 4 Elections Clause vest specific authority regarding time, place, and manner of elections to the state legislature, the Pennsylvania Constitution specifically gives the responsibility for regulating the registration of electors to the legislative branch. Pa.Const. art. VII, § 1.

Although tasked with "implementing" and "enforcing" a driver's license voter registration system, State executive branch defendants do not have legitimate power to create a new system, nor do they have authority to change the way that people register to vote in Pennsylvania. In fact, the statutory framework specifically provides for the system used for implementation and enforcement, already in place, by reference to "the driver's license voter registration system created under this section." 23 Pa.C.S. § 1323(a)(2).

The Pennsylvania code regarding voter registration allows: "An individual qualified to register to vote…may apply to register…" 25 Pa.C.S. § 1321. *Applying* to

register is a statutory requirement. This mandates the voter-registration applicant to perform an intentional, overt act. By changing the way the Pennsylvania electorate registers to vote, the Governor abrogates the statutory requirement for *applying* to register and removes the overt act.

That there is a material difference between the actions of checking a box and leaving one unchecked is evident in the existing election code, which lays out how the Pennsylvania Legislature has regulated the time, place, and manner of elections for voter registration. In a section of the election code entitled "Government Agencies, 25 Pa.C.S. § 1325(a) designates certain state-funded agencies that must distribute, assist, accept, and transmit voter registration applications. The section continues in 25 Pa.C.S. § 1325(b), which specifies required language for the forms provided by those agencies, which includes:

> An agency designated in subsection (a) shall provide a form for office visits or, if the agency provides services to persons with disabilities, for home visits which contains all of the following:
> The question "If you are not registered to vote where you live now, would you like to apply to register to vote today?"
> …
> (3) Boxes for the applicant to check to indicate whether the applicant would like to register or decline to register to vote. In close proximity to the boxes the following words shall appear in prominent type: "IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME."

(all caps emphasis in statute). In part (c), the same section of code specifies that "Failure to check either box under subsection (b)(3) shall be considered a declination

to register to vote." Because the election code specifies the effect of not checking the box, there is a discrepancy between the "2023 redesign" and the state law. Failure to check a box does not meet the definition of an "application" as the Pennsylvania legislature already established that failure to check a box is considered a declination to register.

Further, Governor Shapiro recently admitted on publically-available social media platform X that *he* "made Pennsylvania an automatic voter registration state."



@GovernorShapiro, X (June 5, 2024) https://x.com/GovernorShapiro.[1] Governor Shapiro's mandate is inconsistent with existing laws, and as such, is not lawful. Further, Governor Shapiro's effective abrogation of the existing code has specifically injured at least several Legislator-Appellants individually by nullifying their actions.

---

[1] The @GovernorShapiro is a verified government account on X.com, the platform formerly known as "Twitter." The full text of Governor Shapiro's X post said: "Free and fair elections are the cornerstone of our democracy. That's why I made Pennsylvania an automatic voter registration state — making our elections more secure and saving taxpayers time and money." The post also linked to a news media video and accompanying article: Alexandria Maruez, *Election Officials in Key Battleground States Say They're Prepared for Threats to Poll Workers Ahead of 2024 Elections*, NBC News (May 2, 2024, 8:21 AM), https://www.nbcnews.com/politics/2024-election/election-officials-key-battleground-states-prepared-threats-2024-rcna154061.

Democrats have tried and failed to pass laws establishing automatic voter registration in Pennsylvania. The December 6, 2022 Memorandum of Pennsylvania Senator Vincent Hughes (not one of the Legislator-Appellants) explained that he would be "reintroducing my automatic voter registration legislation" which "would essentially change our voter registration system from an 'opt-in' system to an 'opt-out' system." App.79. The change from opt-in to opt-out was what Senator Hughes sought to achieve through legislation, and it is the ill-gotten victory he received when Governor Shapiro bypassed the legislature to implement automatic voter registration. Senator Hughes, and other supporters of the bill he reintroduced did not suffer injury from the Governor's action. Senator Hughes, and others who would have supported a legislative change from opt-in to opt-out benefited from the governor's action, which allowed them to entirely avoid a "legislative battle." Only those that opposed, or would have opposed the bill are harmed, which is less than the entirety of the legislative institution.

The Legislator-Appellants, who were injured by the governor's actions were completely deprived of the opportunity to vote on the change to the manner of elections. For example, as Representative Joseph Hamm reiterated in his declaration, he had no opportunity to vote on the change. App.317 (Declaration of Joseph Hamm). As a current member of the Pennsylvania House (serving from 2021 through the present), Joeseph Hamm had a particular right to vote on any new legislation that would have altered the manner of federal elections regarding voter registration as

established in 25 Pa.C.S. § 1325 in 2023. Instead, in 2023, the Governor changed the manner of federal elections by edict.

The State Defendants deflect from this violation of the separation of powers by suggesting that Legislator-Appellants retain legislative tools to solve any problems created by either the 2018 HAVA Directive (Count V of their Amended Complaint, App.65-67), or the 2023 redesign. State Defs' Br. at 23 n.8. However, as shown above, the Legislator-Appellants have used their tools, and the Governor's "2023 redesign," which he claims as his positive implementation of "automatic voter registration" already flouts the greatest legislative tool, that is, successfully passed, enacted, and retained legislation. Does the state really suggest the "legislative tool" available to Legislator-Appellants is to re-introduce and re-pass existing law? That suggestion is absurd. The Legislator-Appellants have no legislative mechanism to compel compliance with the existing law, and no reason to believe the Governor would sign any re-enacted bill.

The Legislator-Appellants have alleged full Coleman-qualifying claims, with injuries sufficiently particularized, and not suffered by the Commonwealth's legislature as a whole. The State and Federal Executive Branch defendants' actions have bypassed the U.S. Constitution through regulating the manner of federal elections, effectively cutting Legislator-Appellants off from any effective legislative remedies.

## CONCLUSION

For the reasons stated herein and in their principal brief, the 27 Pennsylvania Legislator-Appellants request this Court reverse the district court's dismissal of the amended complaint and remand the case for further proceedings.

Respectfully submitted,

Dated: August 16, 2024

 s/Erick G. Kaardal
Erick G. Kaardal, WI 1035141
Elizabeth A. Nielsen, PA 335131
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: (612) 341-1074
Email: kaardal@mklaw.com
Email: nielsen@mklaw.com

Karen T. DiSalvo, PA 80309
Mohrman, Kaardal & Erickson, PA
Election Research Institute
1451 Quentin Rd Ste 232
Lebanon, PA 17042
Email: kd@election-institute.com
*Attorneys for Appellants*

# CERTIFICATE OF COMPLIANCE

---

I certify that I am a current member of this Bar in good standing.

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

> The brief contains 4,858 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii)

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

> The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14 point Garamond Font.

This brief has been scanned for viruses and malware and the best of my knowledge are free from viruses or malware.

I hereby certify that on August 16, 2024, I electronically filed the Appellants' Principal Brief, with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I hereby certify that the electronic version is identical to the paper copies.

Dated: August 16, 2024.       s/Erick G. Kaardal
       Erick G. Kaardal, WI 1035141
       Elizabeth A. Nielsen, PA 335131
       Mohrman, Kaardal & Erickson, P.A.
       150 South Fifth Street, Suite 3100
       Minneapolis, Minnesota 55402
       Telephone: (612) 341-1074
       Email: kaardal@mklaw.com
       Email: nielsen@mklaw.com
       *Attorneys for Appellants*

# USE OF AI TECHNOLOGY CERTIFICATION

Counsel attests to the best of counsel's ability that appropriate steps to verify whether AI technology systems have been used in preparation of this submission, and if used, appropriate steps were taken to verify the truthfulness and accuracy of facts and citations of that content before submission to this Court. This submission did rely upon the ordinary or customary research tools and other available research sources such as, but not limited to, Westlaw or Lexis.

Dated: August 16, 2024

s/Erick G. Kaardal
Erick G. Kaardal, WI 1035141
Elizabeth A. Nielsen, PA 335131
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: (612) 341-1074
Email: kaardal@mklaw.com
Email: nielsen@mklaw.com

Karen T. DiSalvo, PA 80309
Mohrman, Kaardal & Erickson, PA
Election Research Institute
1451 Quentin Rd Ste 232
Lebanon, PA 17042
Email: kd@election-institute.com
*Attorneys for Appellants*