**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1716
_____

DAWN KEEFER; TIMOTHY BONNER; BARRY JOZWIAK; BARBARA GLEIM; JOSEPH HAMM; WENDY FINK; ROBERT KAUFFMAN; STEPHANIE BOROWICZ; DONALD (BUD) COOK; PAUL (MIKE) JONES; JOSEPH D'ORSIE; CHARITY KRUPA; LESLIE ROSSI; DAVID ZIMMERMAN; ROBERT LEADBETER; DANIEL MOUL; THOMAS JONES; DAVID MALONEY; TIMOTHY TWARDZIK; DAVID ROWE; JOANNE STEHR; AARON BERNSTINE; KATHY RAPP; REPRESENTATIVE MARK GILLEN; REPRESENTATIVE JILL COOPER; REPRESENTATIVE MARLA BROWN; SENATOR CRIS DUSH,
All Pennsylvania Legislators,
Appellants

v.

PRESIDENT UNITED STATES OF AMERICA; GOVERNOR OF PENNSYLVANIA; SECRETARY COMMONWEALTH OF PENNSYLVANIA; DEPUTY SECRETARY ELECTIONS COMMISSIONS; UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF AGRICULTURE; SECRETARY; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; SECRETARY PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES; UNITED STATES DEPARTMENT OF STATE; SECRETARY PENNSYLVANIA DEPARTMENT OF STATE; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; UNITED STATES DEPARTMENT OF ENERGY; SECRETARY; UNITED STATES DEPARTMENT OF EDUCATION; SECRETARY UNITED STATES DEPARTMENT OF EDUCATION
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:24-cv-00147)
District Judge: Honorable Jennifer P. Wilson
_____

Argued: January 16, 2025
_____

Before: PHIPPS, FREEMAN, and CHUNG, *Circuit Judges*

(Filed: March 4, 2025)

———

Erick G. Kaardal   **[ARGUED]**
Elizabeth A. Nielsen
MOHRMAN KAARDAL & ERICKSON
150 S 5th Street, Suite 3100
Minneapolis, MN 55402

*Counsel for Appellants*

McKaye L. Neumeister   **[ARGUED]**
Jeffrey E. Sandberg
Daniel Tenny
UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
Room 7231
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for Appellee President United States of America*

Jacob B. Boyer   **[ARGUED]**
OFFICE OF ATTORNEY GENERAL OF PENNSYLVANIA
OFFICE OF GENERAL COUNSEL
30 North Third Street, Suite 200
Harrisburg, PA 17101

*Counsel for Appellee Governor of Pennsylvania*

Robert J. Muise
THE MUISE LAW GROUP
P.O. Box 131098
Ann Arbor, MI 48113

*Counsel for Amici Members of Congress in Support of Appellants*

Thomas E. Breth
Thomas W. King, III
DILLON MCCANDLESS KING COULTER & GRAHAM
128 W Cunningham Street
Butler, PA 16001

*Counsel for Amici States of West Virginia, Arkansas, Indiana, Louisiana, Mississippi, Montana, New Hampshire, and Wyoming in Support of Appellants*

David J. Craig
FOUNDATION FOR GOVERNMENT ACCOUNTABILITY
15275 Collier Boulevard, Suite 201
Naples, FL 53103

*Counsel for Amicus Foundation for Government Accountability in Support of Appellants*

---

OPINION[*]

---

PHIPPS, *Circuit Judge*.

Two clauses in the Constitution confer certain powers regarding the regulation of federal elections to state legislatures. The Elections Clause gives initial responsibility to state legislatures over the regulation of elections for the United States Congress:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

U.S. Const. art. I, § 4, cl. 1. The Electors Clause allows state legislatures to direct the manner of appointing electors to the Electoral College:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

3

> Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

U.S. Const. art. II, § 1, cl. 2.

Consistent with those clauses and the Pennsylvania Constitution,[1] the Pennsylvania General Assembly has regulated voter registration in the Commonwealth for elections to both federal and state offices. In 2002, the General Assembly mandated the rejection of incomplete or inconsistent voter-registration applications if, after reasonable efforts, necessary information could not be ascertained. *See* 25 Pa. Cons. Stat. § 1328(b)(2)(i) (2002) (amended 2020). Twenty years later, in 2022, the General Assembly limited voter-registration expenditures within the Commonwealth to funding from lawful governmental appropriations – those "derived from taxes, fees and other sources of public revenue." 25 Pa. Stat. § 2607(a). Additionally, in 2023, the Pennsylvania Senate's State Government Committee considered, but did not bring to the floor, Senate Bill 40, which would have allowed automatic voter registration throughout the Commonwealth. *See* S.B. 40, 207th Gen. Assemb., Reg. Sess. (Pa. 2023).

Twenty-seven members of the Pennsylvania General Assembly allege that on three occasions, governmental actors – other than Congress[2] – have also regulated elections in Pennsylvania. In 2018, the Pennsylvania Department of State instructed counties not to reject voter registrations solely based on a mismatch between an applicant's presented

---

[1] Pa. Const. art. VII, § 1 ("Every citizen 21 years of age, possessing the following qualifications, shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact."); *cf.* U.S. Const. amend. XXVI ("The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.").

[2] *Cf.* U.S. Const. art. I, § 4, cl. 1 (providing Congress with ultimate authority over the regulation of congressional elections except with respect "to the Places of chusing of Senators"); U.S. Const. amend. XVII (requiring the election of Senators "by the people" of each state qualified to vote for "the most numerous branch of the State legislatures").

driver's license number or Social Security number and the corresponding numbers for that applicant in state or federal databases. On March 7, 2021, President Joseph R. Biden issued an executive order directing the "head of each [federal] agency [to] evaluate ways . . . [to] promote voter registration" throughout the country, and several federal agencies took affirmative action in response to that order. Exec. Order No. 14019, *Promoting Access to Voting*, 86 Fed. Reg. 13623, 13623 (Mar. 7, 2021).[3] And on September 19, 2023, even though the General Assembly had not enacted a similar proposal in Senate Bill 40, Pennsylvania Governor Josh Shapiro announced that automatic voter registration would be implemented for driver's license and state ID card applicants in Pennsylvania Department of Transportation centers.

The twenty-seven state legislators believe that those actions infringe on the General Assembly's constitutional prerogative over the regulation of federal elections in Pennsylvania. On February 16, 2024, they filed an amended complaint, suing President Biden, the United States, six federal agencies, their heads, Governor Shapiro, and two state officials, in the United States District Court for the Middle District of Pennsylvania. The defendants moved to dismiss on several grounds, and the District Court dismissed the case based on the legislators' lack of Article III standing. *See Keefer v. Biden*, 725 F. Supp. 3d 491, 494 (M.D. Pa. 2024). Through a timely notice of appeal of that final decision, the legislators invoked this Court's appellate jurisdiction, and they now contest that ruling. *See* 28 U.S.C. § 1291. On *de novo* review, we will affirm the judgment of the District Court for the reasons below.

---

[3] On January 20, 2025, President Donald J. Trump issued an Executive Order rescinding President Biden's Executive Order 14019. *See* Exec. Order No. 14148, *Initial Rescissions of Harmful Executive Orders and Actions*, 90 Fed. Reg. 8237, 8238 (Jan. 20, 2025).

A party seeking to invoke the limited jurisdiction of a federal court bears the burden of establishing Article III standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To do so, a plaintiff must make three showings: (i) an injury-in-fact that is concrete, particularized, and actual or imminent; (ii) fair traceability between the injury-in-fact and the defendant's challenged conduct; and (iii) the likely redressability of the injury-in-fact through a favorable judicial decision. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

To meet that burden, the legislators assert an individual injury derived from the loss of the General Assembly's institutional power to regulate federal elections in Pennsylvania. As a benchmark, no party disputes that if the General Assembly would have initiated this suit, then it would satisfy the elements for Article III standing. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 803–04 (2015) (concluding that both houses of the Arizona State Legislature had standing to challenge the transfer of its federal electoral regulatory power to an independent commission created by a citizen initiative). But the General Assembly is not a plaintiff in this suit – the plaintiffs are twenty-seven legislators. And under this Court's binding precedent, "individual legislators lack standing to assert institutional injuries belonging to the legislature as a whole." *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 311 (3d Cir. 2022); *see also Raines v. Byrd*, 521 U.S. 811, 821 (1997) (holding that individual members of Congress lack standing to sue to protect the interests of Congress); *cf. Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 664 (2019) (holding that one house of a state's bicameral legislature that was not otherwise authorized to litigate on behalf of the state lacked standing to defend the constitutionality of state legislation).[4]

---

[4] The legislators dispute this conclusion based on *Coleman v. Miller*, 307 U.S. 433 (1939). That case involved a proposed constitutional amendment that was pending ratification "by

Without the ability to rely on the institutional injury to the General Assembly as a basis for standing, the only remaining grievance that the legislators assert is an interest that governmental officials follow the Constitution.[5] But the injury-in-fact element requires a particularized injury, *see Spokeo*, 578 U.S. at 339, and without more, an interest in the constitutional administration of government is "a nonjusticiable 'general interest common to all members of the public,'" *Gill v. Whitford*, 585 U.S. 48, 68 (2018) (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937) (per curiam)); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482–83 (1982) ("[C]laims of standing predicated on 'the right, possessed by every citizen, to require that the Government be administered according to law' . . . amount to little more than . . . 'generalized grievances about the conduct of government.'" (first quoting *Baker v. Carr*, 369 U.S. 186, 208 (1962); and then quoting *Flast v. Cohen*, 392 U.S. 83, 106 (1968))); *Russell v. DeJongh*, 491 F.3d 130, 135 (3d Cir. 2007) ("[O]nce a bill has become law, a

---

the Legislatures of three fourths of the several States," U.S. Const. art. V, and individual legislators from Kansas claimed that their votes against ratification had "been overridden and virtually held for naught," *Coleman*, 307 U.S. at 438, because the Lieutenant Governor participated in and cast the tie-breaking vote for Kansas with respect to that proposed constitutional amendment, *see id.* at 446–47. Here, however, the legislators do not challenge the process for voting on any piece of legislation; instead, they claim that other governmental actors have infringed on the rights conferred upon state legislatures by the Constitution. Binding precedent, however, precludes Article III standing for legislators who sue individually to vindicate the institutional interests of a legislature. *See Yaw*, 49 F.4th at 311; *see also Raines*, 521 U.S. at 821, 824.

[5] In District Court, the legislators pursued a theory of candidate standing. *See, e.g.*, *Davis v. FEC*, 554 U.S. 724, 734–35 (2008) (holding candidate had suffered an injury in the form of increased campaign expenditures from a law that would "allow[] his opponents to receive contributions on more favorable terms"); *Belitskus v. Pizzingrilli*, 343 F.3d 632, 641 (3d Cir. 2003) (suggesting that a law's impact "on [a] candidate's campaign strategy and allocation of resources" may be "sufficient to satisfy the requirements of Article III" standing (citing *Becker v. FEC*, 230 F.3d 381, 386–87 (1st Cir. 2000))). They do not press that argument on appeal.

legislator's interest in seeing that the law is followed is no different from a private citizen's general interest in proper government.").

For these reasons, the legislators have failed to establish Article III standing to pursue claims based on institutional injury to the Pennsylvania General Assembly, and we will affirm the judgment of the District Court.